UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MALIBU BOATS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CV-656-TAV-HBG |
| | ) | |
| NAUTIQUE BOAT COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on two motions: (1) plaintiff Malibu Boats, LLC's Motion to Enjoin Nautique from Maintaining a Later-Filed, Parallel Action in Florida [Doc. 4]; and (2) defendant Nautique Boat Company, Inc.'s Motion to Change Venue [Doc. 18] filed in response to plaintiff's motion, in which defendant seeks to transfer this action to the Middle District of Florida, Orlando Division. While plaintiff filed a response to defendant's motion [Doc. 23], defendant has not filed a separate response beyond its motion and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1. Given the overlap of the issues discussed in the motions, the Court finds it appropriate to take up both motions together.

**I.      Background**

This case involves several patents owned by plaintiff which cover a system that is intended to modify the wake of a boat in order to make the wake suitable for surfing, whereby a person trails the boat and uses a board to surf the boat's wake [Doc. 4 at 2-3].

Plaintiff, a boat manufacturer headquartered in Loudon, Tennessee, developed the technology primarily in California, although several inventors of the technology, along with the files related to the patents, reside in Tennessee [*Id.* at 3]. The commercialized embodiment of this patented technology is known as "Surf Gate," which, plaintiff claims, "allows boaters to almost instantly change the boat's wake so that it can be surfed" [Doc. 23 at 7]. Plaintiff released Surf Gate as an option for its line of boats designed for watersports in 2012.

In 2013, defendant, a competing boat manufacturer headquartered in Orlando, Florida, released the Nautique Surf System ("NSS"), which plaintiff alleges is in direct competition with Surf Gate [Doc. 4 at 3]. Like Surf Gate, NSS allows a boat's operator to control the wake of the boat [*Id.*]. NSS was developed in Florida [Doc. 18 at 1]. Both parties have authorized dealers in Tennessee [Doc. 4 at 2], and, plaintiff alleges, compete nationally for market share in the water-sports boat industry [*Id.*].

Plaintiff first filed suit against defendant and a boat dealer who sold defendant's boats for patent infringement in the Central District of California, CV12-06854 PSG, in September 2013 (the "California action") [Doc. 4-2].[1] On October 25, 2013, the district court, Judge Philip Gutierrez, presiding, issued a Show Cause Order requiring plaintiff to show why the action should not be dismissed, as plaintiff failed to properly plead venue

---

[1] In its initial complaint in the California case, plaintiff only asserted a claim for U.S. Patent No. 8,534,214 (the "'214 patent"), issued September 17, 2013, and later amended the complaint to include a claim for U.S. Patent No. 8,539,897 (the "'897 patent"), issued on September 24, 2013. While plaintiff's initial complaint in the present action only included these two patents, plaintiff has amended its complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure, adding a claim for infringement as to U.S. Patent No. 8,578,873 (the "'873 patent"), issued on November 12, 2013 [Doc. 25].

[Doc. 4-4 at 4]. In response to this order from the district court, plaintiff filed a Notice of Dismissal Pursuant to Rule 41(a) on October 31, 2013, voluntarily dismissing the California action [Doc. 4-5].[2] In its notice of dismissal, plaintiff declared that it was re-filing its action in the Eastern District of Tennessee [*Id.*]. The present action was filed the same day [*See* Doc. 1]. On November 1, 2013, defendant filed an action in the United States District Court for the Middle District of Florida, Orlando Division, Case No. 6:12-CV-1707-ORL-36TBS (the "Florida action"), seeking a declaratory judgment of non-infringement or invalidity as to the '897 and '214 patents [Doc. 4-1].

## II. Analysis

In its motion, plaintiff asserts that this Court should continue to exercise jurisdiction over the case under the first-to-file doctrine, as defendant filed the Florida action with full knowledge that plaintiff had filed this action the day before [Doc. 4 at 5]. Plaintiff argues that as there are no special circumstances warranting a departure from the first-to-file doctrine, such as bad faith, forum shopping, or anticipation of defendant's suit, the Court should exercise its power to enjoin the Florida action [*Id.* at 6].

Defendant, in its motion, proposes transferring venue to the United States District Court for the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. § 1404(a), the discretionary venue transfer statute [Doc. 18 at 5]. Transfer is proper, defendant contends, because of the convenience of the parties, the convenience of party

---

[2] In support of its motion to enjoin defendant's later-filed action, plaintiff notes that the California action was filed in the Central District because it was where the other defendant in the case was located [Doc. 4 at 3].

and non-party witnesses, and because transferring the case further the interests of justice. In support of the motion, defendant argues that because defendant is headquartered in Florida, where NSS was developed, tested, and installed on its boats, all of the documents, drawings, and other related evidence pertaining to infringement are located in Florida. The test boat with NSS installed is similarly located in Florida, defendant submits, as are defendant's employee engineers and officers [*Id.* at 10]. Defendant also argues that the Middle District of Florida has a faster median time from the filing of a complaint to trial, making transfer appropriate because it will give the parties a "quicker path to trial" [*Id.* at 12]. Defendant contends that the Middle District of Florida is more familiar with patent law, which also favors transfer [*Id.*]. In response to defendant's motion, plaintiff contends that defendant has not shown that any inconvenience of defendant is sufficient as to warrant a transfer, which would merely shift the inconveniences to plaintiff.

The first-to-file doctrine "provides [that] when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (quoting *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984)). "This rule is a well-established doctrine that encourages comity among federal courts of equal rank." *Zimmer Enters, Inc. v. Atlandia Imports, Inc.,* 478 F. Supp. 2d 893, 988 (S.D. Ohio 2007). District courts use three factors to determine whether the first-to-file doctrine warrants the invocation of their

4

discretion to transfer or otherwise dispose of a case: "(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *NCR Corp. v. First Fin. Computer Serv., Inc.*, 492 F. Supp. 2d 864, 866 (S.D. Ohio 2007) (citation omitted). "District courts have the discretion to dispense with the first-to-file rule where equity so demands." *Zide Sport Shop*, 16 F. App'x at 437. "Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Id.*

This general rule, however, "does not supersede the inquiry into the balance of convenience" under 28 U.S.C. § 1404(a). *Zimmer*, 478 F. Supp. 2d at 989; *see also Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 380 (D. Del. 2012) (noting that a "court must take into consideration the 'general' rule that 'favors the forum of the first-filed action'" in addition to its § 1404 analysis (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937038 (Fed. Cir. 1993), *overruled on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995))). This statute provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). If venue is proper, and yet another federal district court would be a more convenient forum, the case may be transferred pursuant to § 1404(a) to that other forum. The decision of whether to transfer under § 1404(a) is left to the discretion of the district court when considering convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *see also Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531,

5

537 (6th Cir. 2002) (stating that "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness").

   A.   **The First-to-File Doctrine**

In turning to consideration of the first-to-file doctrine as applied in this case, the Court first notes that there is no dispute as to whether the present action was filed prior to the Florida action, so that this action is the first-filed for purposes of the doctrine. There is also no dispute that the issues in the two cases are essentially the same, as the Florida action involves two of the three patents-in-suit in this case. In addition, upon review of both the history of this case and of the litigation between the parties, the Court does not find any exception to the application of the first-to-file doctrine present. There have been no arguments raised by defendant as to plaintiff's bad faith, nor can defendant reasonably argue that plaintiff's action for patent infringement was "anticipatory" to defendant's declaratory suit. *See Cellectis*, 858 F. Supp. 2d at 385 (finding it "difficult to believe that a patent holder's suit for patent infringement could ever be deemed 'anticipatory' to a declaratory judgment suit filed by the accused infringer"). While defendant alleges that plaintiff's acts of filing in California and subsequently Tennessee, constitute forum shopping, the Court does not find that plaintiff's actions warrant disregarding the first-to-file doctrine, particularly in light of defendant's motion to transfer. *See id.* ("[T]he Court declines to characterize a patentee's choice of venue as 'forum shopping' when, by moving to transfer venue, a defendant is doing the same thing – choosing a venue that it believes to be more favorable to its claims for whatever reason."). Thus, application of

6

the first-to-file doctrine would maintain the action before this Court. The only remaining issue, then, is whether the convenience of the parties and their witnesses and the interests of justice overcome the first-to-file rule and warrant transfer of the case under § 1404(a).

    **B.    Transfer under Section 1404(a)**

In determining whether to grant a motion to transfer venue via § 1404(a), the district court must first determine whether the claim could have been brought in the transferee district. 28 U.S.C. § 1404(a). A district court must then consider and balance all of the relevant factors to resolve whether the litigation in question would proceed more conveniently and whether the interests of justice would be better served through transfer to a different forum, thereby requiring a highly contextualized and case-specific inquiry. *Stewart Org.*, 487 U.S. at 29. Within the Sixth Circuit, factors considered by district courts include:

> (1) convenience of the witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of the relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means and resources of the parties; (6) locus of the operative facts and events that gave rise to the dispute or lawsuit; (7) each judicial forum's familiarity with the governing law; (8) the deference and weight accorded to the plaintiff's choice of forum; and (9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances.

*Mardini v. Presidio Developers, LLC*, No. 3:08-CV-291, 2011 WL 111245, at *6 (E.D. Tenn. Jan. 13, 2011); *see also Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (noting that "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other

7

public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice'" in § 1404(a) analysis). "In short, the Court may consider any factor that may make any eventual trial 'easy, expeditious, and inexpensive.'" *Helder*, 764 F. Supp. at 96 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "Defendant's burden under § 1404(a) is to demonstrate that a change of venue to the transferee district is warranted." *B.E. Tech., LLC v. Facebook, Inc.*, --- F. Supp. 2d ---, 2013 WL 3724950, at *3 (W.D. Tenn. Jul. 12, 2013). "If the court determines that the 'balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of [forum] should prevail.'" *Id.* (alteration in original) (quoting *Stewart v. Am. Eagle Airlines, Inc.*, No. 3:10-00494, 2012 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010)); *see, e.g. Mardini*, 2011 WL 111245 at *7 (noting that motion to transfer is proper when balance of factors weigh "strongly in favor of transfer" (quotations omitted)).

As an initial matter, there appears to be no dispute that this action could have originally been filed in the Middle District of Florida, satisfying the requirement that the action could have been filed in the transferee district in order for a transfer to be proper under the statute. 28 U.S.C. § 1404(a). Upon review of the relevant factors in this case and the arguments of the parties, however, the Court concludes that defendant has not met its burden of showing that transfer of the action is warranted.

8

### 1. Convenience of the Witnesses

Defendant argues that transfer to the Middle District of Florida is warranted because of the convenience of both party and non-party witnesses. As defendant is headquartered in Florida, defendant submits, defendant's employees, including engineers and corporate officers who will testify to the development of NSS, reside in Florida, making travel to the Eastern District inconvenient for them. Defendant also notes that it plans on calling several non-party witnesses who reside in Florida, making travel to Tennessee inconvenient for them and also potentially putting them beyond the reach of this Court's subpoena powers. While plaintiff notes that the majority of its witnesses reside in Tennessee, defendant argues that, as the product was designed in California, at least some of plaintiff's witnesses will have to travel regardless of the location of the trial.

As this Court has previously noted, considerations of the convenience of witnesses "is often considered to be the most important factor when determining which forum is the most convenient." *Mardini*, 2011 WL 111245 at *7. In order to show that another district is more convenient for witnesses, a party must do "more than simply assert that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district." *B.E. Technology*, 2013 WL 3724950 at *4 (quotations omitted). In addition to showing inconvenience of witnesses, the party seeking transfer must also provide "'sufficient details respecting the witnesses and their potential testimony to

9

enable a court to assess the materiality and the degree of convenience.'" *Id.* (quoting *Eaton v. Meathe*, No. 1:11-cv-178, 2011 WL 1898238, at *3 (W.D. Mich. May 18, 2011)). With respect to non-party witnesses, the availability of compulsory process, related to the issue of convenience, is an important consideration for the court. *Id.* at 8.

Turning to the convenience of party witnesses, defendant identified several individuals, including defendant's vice president of marketing and product development, and two engineers involved in the design of NSS, whom it expects to call at trial. Defendant notes that the engineers in particular were involved in the testing of the system and its various prototypes. While the Court finds that defendant has shown sufficient evidence as to the nature of these individuals' testimony, the Court does not find that defendant has carried its burden of showing that these witnesses, or any other of defendant's employees, "will be unwilling to testify" if asked to do so or how any such employees "will be severely inconvenienced if the case proceeds in this district." *B.E. Technology*, 2013 WL 3724950 at *5. In addition, the Court notes that other courts, including the Western District of Tennessee, have noted that corporations are normally able to make its employees available to testify when and where needed. *Id.* (citing cases).[3]

With regard to non-party witnesses, defendant contends that there are "several likely witnesses in Florida with direct knowledge of both the accused system and the

---

[3] To the extent the Court considers the convenience of defendant's employee witnesses, plaintiff submitted several inventor and similar employees who reside in Tennessee and who may testify to rebut claims of invalidity as well as present testimony as to damages, which weighs against transfer.

10

prior art" [Doc. 18 at 8]. In an affidavit filed in support of its motion, defendant refers to Mike McCachren, whom defendant contacted to acquire interceptor tabs from the Volvo QL Boat Trim System [Doc. 18-1 ¶ 6], and Richard DeVito, the president of Lenco Marine, who worked with defendant on the manufacturing specifications for the interceptor tabs used in the NSS [*Id.* ¶ 8], as two such witnesses. While the Court questions whether the fact that Mr. McCachren served as a sales representative for the acquisition of prior art is sufficient to demonstrate that his testimony would be material to show invalidity or non-infringement, even assuming the testimony was material, defendant has not shown the degree of inconvenience, *i.e.* that the witness would refuse to testify or would otherwise be severely inconvenienced, necessary to warrant a transfer. Defendant's concerns that the Florida witnesses could be beyond the subpoena power of this Court are valid, but plaintiff has submitted evidence of at least one purported witness, Mr. DeVito, who is willing to travel to testify at trial, making a subpoena unnecessary [Doc. 23-3]. *See Invisible Fence, Inc. v. Fido's Fences, Inc.*, 687 F. Supp. 2d 726, 741 (E.D. Tenn. 2009) (noting that witness willing to voluntarily appear at trial moots compulsory process concerns).

Defendant has not disclosed the identity of any other non-party witnesses, or presented elaborated as to the specific nature of their testimony. In addition, defendant has not argued or presented evidence of any reason why the depositions of such witnesses could not be taken and used at trial, should they not be subject to subpoena, although the Court notes this presentation method may be less persuasive than live testimony. *See id.*

11

(noting that depositions may be taken within 100 miles of where deponent resides under Rule 45 of the Federal Rules of Civil Procedure); *see also B.E. Technology*, 2013 WL 3724950, at *8 ("To the extent that non-party witnesses' testimony may be presented by deposition, witness inconvenience would not be an issue."). Thus, the Court concludes that, at best, the inconvenience of witnesses only slightly favors transfer, which is insufficient to sustain defendant's burden.

### 2. Convenience of the Parties

Defendant's primary argument for transfer is that because it, as the alleged infringer, is headquartered in Florida, the necessary documents, sources of proof, and similar evidence are located in Florida, so that the locus of operative facts is Florida, and maintaining the action in Tennessee would act as a burden on defendant. Because the focus of a patent infringement case is on the infringing product, defendant contends, the fact that plaintiff is based in Tennessee does not weigh against transfer.

As this Court has previously noted, "[a] transfer of venue under 18 U.S.C. § 1404(a) must render the litigation more convenient as a whole; it cannot merely shift inconvenience between the parties." *McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934, 941 (E.D. Tenn. 2006) (Mattice, J.); *see, e.g. B.E. Technology*, 2013 WL 3724950, at *11 (finding that convenience of parties did not favor transfer where defendant had shown that transferee district was more convenient for one but not both parties); *EasyWeb Innovations, Inc. v. Facebook, Inc.*, 888 F. Supp. 2d 342, 353

12

(E.D.N.Y. 2012) (noting that plaintiff's choice of venue should not be disturbed where transfer would merely shift inconveniences).

In this case, the majority of documents and evidence related to the patents-in-suit are in Tennessee, where plaintiff is based, while the majority of documents related to the alleged infringing product are located in Florida at defendant's headquarters. With respect to the location of documents and costs of transferring evidence needed for trial, as well as compensating witnesses, transferring the case to Florida would be more convenient for defendant, but defendant has not presented any evidence that it would be as convenient or more convenient for plaintiff, and, as the Sixth Circuit has stated, "[u]nless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than others." *Moses*, 929 F.2d at 1139. Defendant attempts to justify the shift in inconveniences that would be created by transferring this case by arguing that, in a patent case, the locus of operative facts is where the alleged infringing device was designed, developed, and produced. The Court concludes, however, that defendant improperly discounts the role plaintiff's documents and other evidence related to the patents-in-suit may ultimately play as to the disposition of various issues that are likely to arise in this case, including validity of the patents-in-suit, damages related to infringement, and others. In addition, the Court notes that several courts have found that the locus of operative facts can include where either the patent-in-suit or the allegedly infringing product was designed, developed, and produced, finding this factor to be neutral to the issue of transfer. *See EasyWeb*, 888 F. Supp. 2d 342 at 353-54 (citing

13

*Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404, 413 (S.D.N.Y 2010)). While defendant cites to *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009), and *Neil Brothers Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325 (E.D.N.Y. 2006), for the idea that the location of the infringing device should control, the Court finds those cases to be inapposite, given that the plaintiffs in both of those cases were foreign corporations whose chosen forums bore little to no connection to either party. In this case, defendant has not shown that transferring the action from plaintiff's home forum to its home forum would be more convenient for the parties, so that consideration of this factor does not warrant transfer.

### 3. Interests of Justice

Finally, defendant offers various reasons for why transferring this action to Florida would further the interests of justice, making particular reference to the speed with which either district could dispose of the case and the familiarity each court has with patent cases.

In support of its argument that judicial efficiency warrants transfer to the Middle District of Florida, defendant submitted evidence of judicial caseloads from June 30, 2013 for the respective districts, which indicates that the median time from filing to disposition is shorter in the Eastern District of Tennessee, while the time to trial is shorter in the Middle District of Florida. Assuming that this factor favors defendant,[4] the Court does not find that this consideration can outweigh the other factors previously discussed,

---

[4] The Court notes that this factor, to the extent relevant, has been noted as "the most speculative." *Genentech*, 566 F.3d at 1347.

14

nor can it alone warrant departure from the first-to-file doctrine. *See Genentech*, 566 F.3d at 1347 (finding "court congestion" insufficient to warrant transfer and noting that "case-disposition statistics may not always tell the whole story"). To the extent defendant argues that the Middle District is better able to hear this patent conflict because it has more patent disputes on its docket, the Court finds such contentions meritless, as both courts are "equally familiar with, and capable of applying, the legal principles necessary to adjudicate plaintiff's federal patent claims." *EasyWeb*, 888 F. Supp. 2d at 355-56 (citing *Neil Brothers*, 425 F. Supp. 2d at 333 ("Where, as here, the law to be applied is federal patent law, the factor is neutral.")).[5]

Accordingly, upon review of the § 1404(a) factors, individually and when taken as a whole, the Court does not find that defendant has met its burden of showing that transfer to the Middle District of Florida is warranted.

## III. Conclusion

For the reasons set forth herein, plaintiff's motion to enjoin [Doc. 4] is **GRANTED** under the first-to-file doctrine. Defendant's motion to transfer [Doc. 18] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Defendant also argues that there is a public interest in the case in the Middle District of Florida, given that defendant is a Florida-based corporation which employs Florida residents. The Court finds that, to the extent this factor is relevant in a patent case, this factor is neutral as applied to these facts, since plaintiff is based in Tennessee and employs numerous Tennessee residents.